*726 OPINION OF THE COURT
Frank P. Milano, J.
Defendants (hereafter defendant) move pursuant to CPLR 3212 and Canal Law § 120 for summary judgment dismissing the claim based upon its asserted immunity from liability regarding claimant’s wrongful death cause of action arising from an incident in which claimant’s decedent was swept over a dam while allegedly navigating a small motorboat in an area within the statutorily-defined canal waters of the Hudson River.
The claim alleges that claimant’s decedent, Jeffrey Harbison, died on November 17, 2009 when he and a fellow employee of URS Corporation were in a small motorboat which was swept over the “Thompson Island Dam (hereinafter ‘Dam’) ... located in the Hudson River spanning between the Town of Northumberland, Saratoga County and the Town of Fort Edward, Washington County” when the boat’s motor failed. At the time, Harbison was acting in the course of his employment with URS which had contracted with General Electric Company (GE) to perform an archeological survey of designated “lands surrounding the Hudson River and the islands located in the Hudson River” as part of GE’s project to remove polychlorinated biphenyls from certain areas of the Hudson River by dredging and removing sediment from the river bed.
The claim further alleges that Harbison’s death was a “direct result of . . . failures and breaches of duty” of the defendant. In particular, claimant alleges that defendant failed to provide “a safe place to work on or near the Dam in accordance with New York Labor Law § 200,” failed “to warn of the hidden or latent dangers posed by the Dam,” failed to “maintain the Dam in a reasonably safe condition” and failed to “provide safeguards to prevent boats or individuals from being swept over the Dam.”
Defendant’s amended answer alleges as a defense, among other defenses, in paragraphs “TWELFTH” through “FIFTEENTH,” that Canal Law § 120 provides immunity for claims arising from injury or death “ ‘resulting from the navigation of [defendant’s] canals’ . . . ‘notwithstanding any contrary or inconsistent provisions of any other law, general or special’ [and as] a result of the foregoing, this Court lacks jurisdiction of the Claim.”
“A motion for summary judgment should be entertained only after the moving party has established, by competent admissible evidence, that it is entitled *727 to judgment as a matter of law. If the movant meets this initial burden, the opposing party is required to submit evidence which raises a material issue of fact to preclude an award of summary judgment” (Ware v Baxter Health Care Corp., 25 AD3d 863, 864 [3d Dept 2006] [citations omitted]).
Once the moving party has satisfied this obligation, the burden shifts and the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue (see Svoboda v Our Lady of Lourdes Mem. Hosp., Inc., 31 AD3d 877 [3d Dept 2006]).
The court “must view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference and ascertaining whether there exists any triable issue of fact” (Boston v Dunham, 274 AD2d 708, 709 [3d Dept 2000]).
The court’s role on a motion for summary judgment is issue finding, not issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]; Matter of Hannah UU., 300 AD2d 942, 943 [3d Dept 2002], lv denied 99 NY2d 509 [2003]; Schaufler v Mengel, Metzger, Barr & Co., 296 AD2d 742, 743 [3d Dept 2002]), and where a genuine issue of fact exists, the motion must be denied (Fleet Bank v Tiger Racquet Fitness & Exercise Ctr., 255 AD2d 793, 794 [3d Dept 1998]).
Canal Law § 120 provides, in relevant part, as follows:
“There shall be allowed and paid to every person sustaining damages from the canals or from their use or management, or resulting or arising from the neglect or conduct of any officer of the state or the corporation having charge thereof, or resulting or arising from any accident, or other matter or thing connected with the canals, the amount of such damages to be ascertained and determined by the proper action or proceedings before the court of claims, . . . provided that the provisions of this section shall not extend to claims arising from damages resulting from the navigation of canals, and further provided that the provisions herein relating to damages resulting from navigation of the canals shall control notwithstanding any contrary or inconsistent provisions of any other law, general or special.”
The salient portion of the statute instructs that the “State is immune from suit for damages resulting from the navigation of its canals” (Panetta v County of Seneca, 159 AD2d 988, 988 [4th Dept 1990]).
*728 In support of its motion, defendant offers the affidavit of Garret R. O’Connor, a “Professional Licensed Surveyor . . . employed by the New York State Canal Corporation for 13 years.” Mr. O’Connor states that he is “generally familiar with the claims asserted in this matter, including the location of the accident, which was at or just north of the Thompson Island Dam.”
Mr. O’Connor reviewed Canal Corporation records regarding its ownership of the Thompson Island Dam and “records concerning the lands appropriated for the construction of the Barge Canal.”
Upon review of these records, Mr. O’Connor concludes that
“the Canal Corporation owns the Thompson Island Dam as well as the lands on both sides of the Dam and on both sides of the river in the area where the accident happened. These lands were permanently appropriated by the State in connection with the construction of the New York State Barge Canal.”
Defendant also offers the affirmation of its attorney, who asserts that “the Court lacks jurisdiction of the claim because the decedent was engaged in navigation of the canal waters of the State of New York at the time of his death.” The attorney’s affirmation adds that
“Canal Law § 120 provides, in relevant part, that defendants’ waiver of immunity for claims and/or damages arising from injury or death allegedly caused by any officer of the state or the corporation having charge thereof, or resulting or arising from any accident, or other matter or thing connected with the canals, ‘shall not extend to claims arising from damages resulting from the navigation of canals.’ This immunity controls ‘notwithstanding any contrary or inconsistent provisions of any other law, general or special.’ ”
Finally, defendant’s attorney further asserts that claimant may suggest that Canal Law § 120 may “not apply because the accident took place in the Hudson River, and not the dredged canal channel adjacent to the actual river bed.” Defendant’s attorney rejects the claimant’s anticipated response by stating:
“[Pjursuant to section 3 of the Barge Canal Act of 1903, the entire Hudson River from Waterford, New York to Fort Edward, New York is canalized. As the accident took place while the decedent was engaged *729 in navigation between these two locations, the accident occurred in the canal waters of the State.”
The relevant body of law relied upon by defendant is succinctly described in Arquette v State of New York (190 Misc 2d 676, 689-691 [Ct Cl 2001, Patti, J.]):
“Section 120 of the New York Canal Law waives, to a large extent, the State’s sovereign immunity with respect to claims arising on and from the operation of its canal system. By this statute, the State is made liable to ‘every person sustaining damages from the canals or from their use or management.’ Excepted from this waiver, however, and therefore still under the umbrella of sovereign immunity, are ‘claims arising from damages resulting from the navigation of canals.’ . . .
“From its beginning, in the mid-1800’s, the State’s waiver of some portion of its immunity with respect to canal claims has never included those arising from navigation of the canals (see, Locke v State of New York, 140 NY 480 [1894], referring to L 1870, ch 321, and L 1883, ch 205). . . .
“The reservation of immunity with respect to navigational activity has been explained as follows: ‘The intention of [this part of] the statute was to provide that parties while using the canal for their own benefit should take the risks of navigation without reference to whether they were caused or affected by the negligence of the State officers.’ (Zorn v State of New York, 45 App Div 163, 164 [3d Dept 1899].) . . .
“[I]t is safe to say that the ‘navigational’ exception to the waiver of immunity is construed quite broadly (accord, Hugelmaier v State of New York, 125 Misc 2d 1026, 1027 [Ct Cl 1984]). And, in fact, claims brought by persons who are injured while on the canal waters or whose property is injured while it is in the canal have been uniformly unsuccessful (see, Barrett v State of New York, 139 Misc 2d 42 [Ct Cl 1988]; Gray v State of New York, 205 Misc 242 [Ct Cl 1954]; Glens Falls Ins. Co. v State of New York, 188 Misc 684 [Ct Cl 1947]). This is true whether the injured parties are present on canal waters for private or commercial purposes (Hugelmaier v State of New York, supra); whether the vessels are in motion at the time of the injury (Glens Falls Ins. Co. v *730 State of New York, supra [cement slab falling from canal wall onto motionless boat]); whether the State’s action involved operation of a statutory canal, a fixture, or of a boat upon the canal waters (Sayer v State of New York, 116 Misc 644 [Ct Cl 1921] [moored boat struck by derrick boat operated by the State]); and . . . whether or not the direct cause of the injury had anything to do with actual navigation (Penn No. 5 v State of New York, 205 Misc 18 [Ct Cl 1953] [negligent withdrawal of water into an adjacent power house]; Condon v State of New York, 169 Misc 666 [Ct Cl 1938] [person on barge st(r)uck by lift bridge]).”
The court finds that defendant has met its initial burden on the motion by offering proof that decedent was engaged in navigating a portion of the canal system at the time of the accident and, additionally, that under the circumstances and location of decedent’s accident, Canal Law § 120 provides the defendant absolute immunity from a claim for injuries and damages resulting from navigation of the canal system.
The burden thus shifts to claimant to show the existence of a triable issue of fact.
Claimant offers three grounds in arguing that the “ [defendant’s claim of immunity under Section 120 of the Canal Law is in error.” Claimant’s three grounds, factually supported by only the affidavit of her attorney and unauthenticated copies of Sara-toga County real property tax records, are:
“1) . . . Claimant’s decedent was not navigating the canal but doing archeological work on the banks of the Hudson River in a non-navigable section of the river; 2) upon information and belief, the canal was closed and not open to navigation; and 3) upon information and belief, the area where the accident happened and Mr. Harbison drowned should not be considered part of the canalized river because not only was it not navigable but the shores in the area where the decedent drowned were not owned by Defendants but by private parties.”
Claimant fails to offer any admissible proof that Harbison was not navigating the canal at the time he was, according to the claim itself, “in a small motor boat . . . [which was] swept over the dam.” Claimant relies only upon the statement in her attorney’s memorandum of law that “Mr. Harbison was not navigating the canal but merely examining the shore of the *731 river for artifacts.” Clearly Harbison was navigating, as that term is construed in the applicable case law previously noted, in the Hudson River at the time the accident occurred.
Claimant next argues that the canal was closed to navigation beginning November 15, 2009, prior to Harbison’s accident on November 17, 2009, and Harbison was therefore not navigating the canal. This assertion fails to raise a triable issue of fact in view of the affidavit of Catherine T. Sheridan offered by defendant in reply to claimant’s opposition papers. Ms. Sheridan is a licensed professional engineer and director of maintenance and operations for the New York State Canal Corporation. Ms. Sheridan states as follows:
“I am aware that claimant’s decedent was an employee of URS Corporation, which was a subcontractor of General Electric. On November 17, 2009, the decedent was authorized to navigate a boat owned by his employer on the Champlain Canal pursuant to Permit No. C2W090009 issued to General Electric Company, a copy of which is attached as Exhibit A. This permit granted General Electric, its contractors and subcontractors (including URS) permission to navigate the canal waters in connection with the dredging project outside of normal operating hours and was in effect on November 17, 2009.”
Finally, claimant contends that the area where the accident happened, and Harbison drowned, should not be considered part of the canalized river because the shores in the area where the decedent drowned were not owned by defendant but by private parties. Claimant, providing no admissible proof to support this contention, offers only the affidavit of her attorney, together with unauthenticated copies of certain tax documents, as the basis of this assertion.
In contrast, defendant has, as previously described, submitted the affidavit of a licensed surveyor, Mr. O’Connor, who reviewed the claim and relevant Canal Corporation records and concluded, under oath, that
“the Canal Corporation owns the Thompson Island Dam as well as the lands on both sides of the Dam and on both sides of the river in the area where the accident happened. These lands were permanently appropriated by the State in connection with the construction of the New York State Barge Canal.” (Emphasis added.)
*732 In addition, claimant’s suggestion that Canal Law § 120 is inapplicable because the “shores in the area where the decedent drowned were not owned by Defendants but by private parties,” ignores the fact that Harbison drowned in the river after being swept over the Dam in a disabled boat.
Canal Law § 2 provides the following definitions:
“2. ‘Canals’ shall mean the channel and adjacent state-owned banks of the inland waterways of the state constructed, improved, or designated by authority of the legislature as canals and shall include canalized rivers and lakes, canal water supply reservoirs, canal water supply feeder channels and all appertaining structures necessary for the proper maintenance and operation of the canals. . . .
“6. ‘Champlain Canal’ shall mean the portion of the canal system connecting the easterly end of the Erie canal at Waterford with Lake Champlain at Whitehall.” (Emphasis added.)
As argued by defendant’s attorney, pursuant to section 3 of the Barge Canal Act of 1903 (L 1903, ch 147), the entire Hudson River from Waterford, New York to Fort Edward, New York, was “canalized.”
The “shores in the area” played no role in Harbison’s accident, which occurred in the “channel” of the “canalized” river (Canal Law § 2 [2]). There is no question, in this court’s view, that the accident location is covered by the immunity provided by Canal Law § 120.
For all of the foregoing reasons, claimant has failed to raise a triable issue of fact as to the defendant’s absolute immunity under Canal Law § 120. The defendant’s motion for summary judgment dismissing the claim is granted. The claim is dismissed.